# In the United States Court of Federal Claims

No. 23-483
(Filed: January 8, 2024)

```
************************************
RYAN J. OTIS,                       *
                                    *
             Plaintiff,             *
                                    *
      v.                            *
                                    *
THE UNITED STATES,                  *
                                    *
             Defendant.             *
************************************
```

*Robert C. Moscati, Sr.*, The Moscati Law Firm, Reston, VA, counsel for Plaintiff.

*Reta E. Bezak*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom was *Major Steven C. Higgins*, U.S. Army Legal Services Agency, of counsel.

## OPINION AND ORDER

**DIETZ, Judge.**

Ryan J. Otis, a former Second Lieutenant in the United States Army, claims he was wrongfully discharged. He brings this suit seeking reinstatement to active-duty status, correction of his military records, and compensation. The government moves for dismissal on the grounds that the Court lacks subject matter jurisdiction over the case under 28 U.S.C. § 1500, which restricts this Court's ability to hear a suit if the plaintiff has a suit against the United States based on the same claim pending in any other court. Because the Court finds that Mr. Otis filed an earlier suit in another court against the United States based on the same operative facts, the Court lacks jurisdiction over his instant suit under § 1500, and it must be dismissed. Accordingly, the Court **GRANTS** the government's motion to dismiss.

## I.      BACKGROUND

Mr. Otis served in the Army from September 8, 2018, to February 14, 2022. Compl. [ECF 1] ¶ 4. On October 17, 2019, a female Army officer reported that Mr. Otis sexually assaulted her on August 30, 2019. *Id*. ¶ 6. Following an investigation by the Army Criminal Investigation Command, the Army charged Mr. Otis with rape and aggravated assault in violation of the Uniform Code of Military Justice ("UCMJ"). *Id*. ¶ 8. Although the case was set for trial, Mr. Otis's accuser declined to testify. *Id.* ¶ 9. On July 23, 2020, the Army issued Mr. Otis a General Officer Memorandum of Reprimand ("GOMOR") for "sexually assaulting and strangling" the female officer in violation of the UCMJ. *Id*. ¶ 10. On July 29, 2020, the Army

dismissed the Court-Martial against Mr. Otis. *Id*. ¶ 11. Thereafter, the Army placed Mr. Otis's GOMOR in his Army Military Human Resource Record ("AMHRR"). *Id*. ¶ 12.

On October 22, 2020, the Army initiated an Administrative Elimination action against Mr. Otis based on the "misconduct" allegation (the alleged rape and sexual assault) and the "derogatory information" in the GOMOR. [ECF 1] ¶ 13. A Board of Inquiry ("BOI"), which convened on March 8 and 9, 2021, determined that a preponderance of the evidence supported the derogatory information in the GOMOR but not the misconduct allegation. *Id*. ¶ 16. Although the BOI recommended that Mr. Otis receive a General Discharge (Under Honorable Conditions) from the Army, it also recommended that its decision be reviewed by higher authorities. *Id*.

On May 24, 2021, the Army reviewed the BOI proceedings and found that there was a "legal objection" to them. [ECF 1] ¶ 17. That legal objection consisted of two substantial errors: (1) the Army's failure to introduce Mr. Otis's entire AMHRR, and (2) the BOI's conclusion that the derogatory information in Mr. Otis's GOMOR was sufficient to warrant a separation recommendation even though the GOMOR was based completely on the misconduct allegation, which itself was deemed not sufficiently supported by the evidence. *Id*. Despite these conclusions, on June 17, 2021, the BOI Convening Authority approved the BOI's findings and recommendation. *Id*. ¶ 18. Thereafter, Mr. Otis made numerous unsuccessful attempts to appeal the Army's adverse actions.[1] *Id*. ¶ 19. On January 18, 2022, the Army Review Boards Agency determined that Mr. Otis would be "eliminated from the Army with a General (Under Honorable Conditions) discharge, based on 'derogatory information.'" *Id*. ¶ 20. Approximately one month later, on February 14, 2022, the Army issued him a DD-214, Certificate of Release or Discharge from Active Duty, with a characterization of service of "Under Honorable Conditions (General)" and a Separation Code of JNC, which prevents re-entry into the military. *Id*. ¶ 21.

On February 13, 2023, Mr. Otis filed a complaint against the United States in the United States District Court for the Eastern District of Virginia ("EDVA"). [ECF 5-1] at 5.[2] In the EDVA complaint, Mr. Otis described the facts surrounding his discharge from the Army—the sexual assault allegations, the GOMOR issuance, the BOI recommendation of discharge and subsequent legal review, the Army's final decision to discharge, and his unsuccessful appeal to the ABCMR. *Id*. at 3-5. He requested the following relief: (1) a remand to the government to "take corrective action consistent with law and regulations;" (2) a remand to the government to remove the GOMOR from his AMHRR; (3) reinstatement to active-duty Army status with all records of separation removed and an award of back pay and allowances dating back to his date

---

[1] Mr. Otis's unsuccessful attempts included the filing of the following:

> (a) an Article 138 Complaint; (b) a DoD IG Complaint; (c) a GOMOR removal petition; (d) a Congressional inquiry; (e) a "Titling" petition to the United States Criminal Investigation Command; (f) an Application for Correction of Military Record to the Army Review Boards Agency; and (g) a petition to the Army Board for Correction of Military Records ["ABCMR"].

[ECF 1] ¶ 19.

[2] All page numbers in the parties' briefings refer to the page numbers generated by the CM/ECF system.

of separation; (4) a Special Selection Board for him to be reconsidered for promotion; (5) a remand to the government to amend the U.S. Army Criminal Investigation Division's ("USACID") titling decision; (6) a remand to the government to "take other appropriate action" regarding his AMHRR "consistent with removing the GOMOR;" and (7) other such relief "as deemed appropriate." *Id.* at 5-6. On June 8, 2023, following the government's consent motion to remand Mr. Otis's case to the ABCMR for corrective action, the EDVA dismissed the complaint.

On April 7, 2023, Mr. Otis filed the instant case. [ECF 1]. As in the EDVA complaint, Mr. Otis complains that he was wrongfully discharged from the Army. *Id*. ¶¶ 4-22. However, in the instant complaint, he includes additional information about the BOI proceedings and the Army's subsequent review. *Id*. ¶¶ 13-22. Further, in the instant complaint, Mr. Otis requests an order directing the Army to: (1) restore him to active-duty status "in the grade, date of rank, and with the years of service" he would have obtained had he remained in the Army; (2) compensate him fully for the pay and allowances he otherwise would have received; (3) correct his military records to "remove any and all references" to the alleged misconduct and the Army's subsequent actions; (4) alternatively, if he "elects not to seek reinstatement" to active-duty, compensate him fully for the pay and allowances he would have received throughout a normal, 20-year career with appropriate promotions and retirement benefits for the remainder of his lifetime as calculated by the Court; (5) compensate him for all lost income from his discharge date to the date he was able to obtain equivalent employment "commensurate with his education, background and experience;" (6) compensate him fully for the legal and medical costs he incurred from his accuser's allegations and the Army's subsequent actions; (7) compensate him fully for the harm he suffered due to the Army's actions, including "personal and professional embarrassment" and reputational harm, PTSD, and "detrimental interference" in his personal relationships; and (8) initiate an investigation into his accuser's "false allegations" and take "all appropriate actions under Army regulations and/or federal law." *Id*. ¶ 26. On June 6, 2023, the government filed the instant motion to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). Def.'s Mot. to Dismiss [ECF 5]. The government's motion to dismiss is fully briefed, and the Court determined that oral argument is not necessary.

## II.      STANDARD OF REVIEW

RCFC 12(b)(1) governs motions for dismissal based on lack of subject matter jurisdiction. "When a defendant challenges this court's jurisdiction pursuant to RCFC 12(b)(1), the plaintiff bears the burden to show by a preponderance of the evidence that jurisdiction is proper." *Ak-Chin Indian Cmty. v. United States*, 80 Fed. Cl. 305, 307 (2008) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)). "In determining jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)). If the jurisdictional facts are disputed, the "court may consider other relevant evidence." *Ak-Chin Indian Cmty.*, 80 Fed. Cl. at 307 (citing *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999); *Reynolds*, 846 F.2d at 747). Jurisdiction is a threshold issue the court must address before proceeding to the merits of the case. *Otoe-Missouria Tribe of Indians, Okla. v.*

*United States*, 105 Fed. Cl. 136, 137 (2012) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)). If the Court determines that it lacks subject matter jurisdiction, it must dismiss the case. RCFC 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *United Keetoowah Band of Cherokee Indians in Okla. v. United States*, 104 Fed. Cl. 180, 183 (2012).

## III.    DISCUSSION

The government argues that the Court lacks subject matter jurisdiction over the case under 28 U.S.C. § 1500 because the instant complaint is "based upon the same set of operative facts" as Mr. Otis's EDVA complaint. [ECF 5] at 8. Mr. Otis opposes the motion, arguing that the operative facts are not the same. Pl.'s Resp. to Def.'s Mot. to Dismiss [ECF 6] at 3. According to Mr. Otis, while the EDVA case focused on the ABCMR action, the USACID titling action, and the filing of the GOMOR, the instant case focuses on the action taken by the Officer Elimination Board. *Id.*

Section 1500 of Title 28 of the United States Code restricts the jurisdiction of this Court when related actions against the United States are pending in other courts. *See United States v. Tohono O'Odham Nation*, 563 U.S. 307, 310-11 (2011). It provides the following:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

Application of § 1500 requires a two-step inquiry. *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013). First, the court must determine "whether there is an earlier-filed 'suit or process' pending in another court." *Id.* Next, the court must determine "whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." *Id.* "If the answer to either of these questions is negative, then the Court of Federal Claims retains jurisdiction." *Id.* However, if § 1500 applies, the Court of Federal Claims "lacks subject matter jurisdiction and must dismiss the complaint." *Id.*

Here, it is undisputed that an earlier-filed suit was pending in another court at the time that Mr. Otis filed the instant case. "Whether an earlier filed 'suit or process' is 'pending' for § 1500 purposes is determined *at the time the complaint is filed* with the Court of Federal Claims." *Brandt*, 710 F.3d at 1375 (emphasis added). When Mr. Otis filed the instant case on April 7, 2023, his February 14, 2023, suit against the United States was pending in the EDVA—a fact Mr. Otis concedes in his response to the government's motion to dismiss. *See* [ECF 6] at 2 ("Plaintiff concedes that the first prong is satisfied in that the EDVA case was pending when the instant action was filed."). Thus, the only issue before this Court is whether, in the instant complaint, Mr. Otis asserts claims that are "for or in respect to" the claims he asserted in his EDVA complaint.

Claims are deemed "for or in respect to" each other "if they are based on substantially the same operative facts, regardless of the relief sought." *Tohono*, 563 U.S. at 311; *see Acetris Health, LLC v. United States*, 138 Fed. Cl. 43, 59-60 (2018) (defining "operative facts" in the context of § 1500 as those that satisfy or help to satisfy an element of a legal claim). In other words, consideration of a court's jurisdiction under § 1500 "focuse[s] on the facts rather than the relief a party seeks." *Tohono*, 563 U.S. at 315. Further, "[c]oncentrating on operative facts is [] consistent with the doctrine of claim preclusion, or res judicata, which bars 'repetitious suits involving the same cause of action' once 'a court of competent jurisdiction has entered a final judgment on the merits.'" *Id.* (quoting *Comm'r. v. Sunnen*, 333 U.S. 591, 597 (1948)). "[T]he legal theories underlying the asserted claims are irrelevant" to the court's inquiry. *Brandt*, 710 F.3d at 1374.

Here, the Court finds that the claim Mr. Otis asserts in the instant complaint is based on the same operative facts as those underlying his claim in the EDVA complaint. In his EDVA complaint, Mr. Otis sought redress for the "2022 ABCMR denial of [his] request for removal of the GOMOR and subsequent correction to his DD214, as well as an amendment to the titling decision." [ECF 5-1] at 5. The theory underlying the claim was that the government's actions were arbitrary and capricious, unsupported by the evidence, and not in accordance with the law and Army regulations. *Id.* In support of the claim, Mr. Otis referenced the following: (1) his alleged misconduct (the female Army officer's allegations); (2) the Army's disciplinary proceedings (the Court-Martial, the GOMOR, the entry of the GOMOR in his AMHRR, the BOI's investigation and recommendation, and the review of the BOI's recommendation); and (3) Mr. Otis's separation from the Army. *Id.* at 3-5. In the instant complaint, Mr. Otis seeks redress for the Army's reliance on his accuser's allegations in support of its decision to discharge him, even though she declined to participate in his trial. [ECF 1] ¶ 25. The theory underlying the claim is that the government's actions were arbitrary and capricious, unsupported by the evidence, and not in accordance with the law and Army regulations. *Id.* ¶ 24. In support of the claim, Mr. Otis references the same facts as he did previously in his EDVA complaint, *see id.* ¶¶ 6, 8-16, 20-21, and he also includes new information about the Army's review of the BOI's findings and recommendation, *see id.* ¶ 17, as well as new information about his unsuccessful attempts to appeal the Army's adverse actions, *see id.* ¶ 19.

In both cases, Mr. Otis seeks relief for his allegedly involuntary and improper separation from the Army. That he frames the legal issue slightly differently and alleges additional facts in the instant case does not change the Court's conclusion that the operative facts underlying both cases are the same. *See Chavez v. United States*, 2023 WL 6458956, at *4 (Fed. Cl. Oct. 4, 2023) (finding that plaintiffs' UCMJ challenge to their incarceration following an Army court-martial arose from the same operative facts as their federal district court case where, in both, plaintiffs contested the military courts' jurisdiction over them as disability retirees); *Holloway v. United States*, 60 Fed. Cl. 254, 261-62 (2004), *aff'd*, 143 F. App'x 313 (Fed. Cir. 2005) (finding that plaintiff's challenge to her retirement status from the Navy arose from the same operative facts as her federal district court case where, in both, plaintiff alleged "that the Navy acted arbitrarily and capriciously when it denied plaintiff an active duty retirement" and sought the correction of her military records). Therefore, under § 1500, the Court lacks subject matter jurisdiction over Mr. Otis's case.

Further, the Court's conclusion that Mr. Otis's claim in this Court and his claim in the EDVA are based on the same operative facts is consistent with the principles of res judicata. Applying res judicata principles to § 1500 can take two forms—the evidence test and the act or contract test. *Tohono*, 563 U.S. at 316.[3] Under the evidence test, the question is whether "the same evidence [would] support and establish both the present and the former cause of action." *Tohono*, 563 U.S. at 316 (quoting 2 H. Black, *Law of Judgments* § 726, p. 866 (1891)). In other words, "the overlapping evidence needed to be both relevant to and legally operative to prove the prior claim before res judicata would act as a bar to the subsequent claim." *Trusted Integration*, 659 F.3d at 1170; *Accord Stowell v. Chamberlain*, 60 N.Y. 272, 276 (1875) ("The question is whether the same evidence will maintain both actions. If the evidence which will sustain the second would have authorized a recovery in the first, under the allegations of the complaint, the first judgment is an absolute bar to the second.") (quoted in *Trusted Integration*, 659 F.3d at 1169-70). Here, because the evidence necessary to prove Mr. Otis's claim in this Court is the same as the evidence necessary to prove his EDVA claim, the Court lacks jurisdiction over his case. In both courts, Mr. Otis must demonstrate that the Army (1) improperly issued his GOMOR and placed it in his official record; (2) improperly conducted his BOI proceeding and issued his BOI recommendation; (3) improperly reviewed his BOI proceeding, and (4) wrongfully discharged him. Mr. Otis's attempt to distinguish the cases based solely on the fact that the EDVA complaint focuses on the Army's refusal to correct his military records whereas the instant complaint addresses the Army's conduct more broadly does not render the proof needed to support both causes of action any less similar under the evidence test.[4]

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** the government's motion to dismiss [ECF 5]. The Clerk is hereby **DIRECTED** to enter judgment consistent with this opinion.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz
Thompson M. Dietz, Judge

---

[3] In *Tohono*, the Supreme Court also stated the following: "The now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap, barring 'claims arising from the same transaction.'" 563 U.S. at 316. However, in *Trusted Integration,* the United States Court of Appeals for the Federal Circuit clarified that "[w]hile the Supreme Court made passing reference to the modern transaction test of the Restatement Second of Judgments, it [also] made clear that it is the tests in place at the time the predecessor to § 1500 was enacted[, meaning the act or contract test and the evidence test,] by which we must be guided." 659 F.3d at 1168 n.4 (citation omitted).

[4] Having determined that the Court lacks jurisdiction over Mr. Otis's case based on the evidence test, the Court need not consider the act or contract test. *See Trusted Integration*, 659 F.3d 1170 n.5 (stating that "[i]f two suits are determined to arise from the same claim under either of the[] res judicata tests . . . application of the bar of § 1500 is likely compelled"). Under the act or contract test, "demands or rights of action which are single and entire . . . arise out of one and the same act or contract" whereas demands or rights of action which are "several and distinct" arise "out of different acts or contracts." *Id.* at 1169 (quoting J. Wells, *Res Adjudicata and Stare Decisis* § 241, p. 208 (1878) (quotation marks omitted)).